I was not the trial counsel for Mr. Ordinola, nor did I represent him for his first appeal. I was appointed to represent him in the 2255 proceedings, which is now before the court today. The issue here is a narrow one, whether or not Mr. Ordinola was denied his Sixth Amendment right to effective assistance of counsel in the plea negotiation process. A little review of the facts indicates that Mr. Ordinola was arrested in August of 1997 on two counts of violation of the drug laws pertaining to the distribution of methamphetamine. The sentencing range that he was looking at if he went to trial and was convicted was 121 to 151 months. Mr. Ordinola had never been arrested before, had no criminal record. He is not a United States citizen. He is from Mexico. He only speaks and reads Spanish, so he needed an interpreter for all phases of his defense. On September 16th, his defense counsel comes to him and tells him that he has had a telephone conversation with the prosecutor and is proposing a plea offer with a sentencing range of 46 to 57 months. This offer is not in writing from the government, and it was not translated, of course, into Spanish because, as I said, it was not in writing. Instead, what we have, according to defense counsel at the hearing, was a document with Ordinola at the top and a bunch of numbers. This is what the defense counsel testified at the hearing that he presented to Mr. Ordinola. Mr. Ordinola testified at the hearing on page 34 of the transcript that he had never seen this document before. And even if he had, Your Honors, I would say that it is confusing at best for somebody who speaks English, but for somebody who does not, it would be very confusing. Nonetheless, according to Mr. Ordinola, he accepts this offer. There is some confusion at the hearing as to what the offer actually was, but Mr. Ordinola was clear. That's more than confusion. You've got a factual finding by the district court. Don't you have to address that? Yes, Your Honor, we do have a finding, and we dispute that that's an accurate finding in terms of the testimony at trial at the hearing. It wasn't a trial, but at the evidentiary hearing. Mr. Ordinola is certain that he did not, that he accepted the offer, and he believed that there was an offer. I think that we're bound by the clear air standard. I mean, to come in and say that Mr. McPhee apparently said one thing, Mr. Ordinola said another, the district court made its decision, what's the basis for us to say the district court clearly erred in the finding that it entered? Well, Your Honor, that's a good question, and I understand what the testimony is at the hearing, and there definitely is a question as to, and it really boils down to a question of credibility. But we're not in a very good position to make that determination. I mean, I understand you've got the case you've got, but our problem is we've got the standard of clear air, and these findings, I think, make it difficult for us to, as your argument builds, I stopped you where I did because you've got a factual premise that I think is at the core of this appeal. You're telling us what Mr. Ordinola said he said. We've got what the district court found, and I have to deal with that. I understand, Your Honor, and Mr. Ordinola's position is that the trial court was incorrect in making that finding, that there was sufficient evidence from his testimony that the trial, or defense counsel, Mr. McPhee at that time was simply incorrect, that he misunderstood, that Mr. McPhee misunderstood that Mr. Ordinola was trying to accept this offer. He did not understand why he proceeded to trial, where, of course, he was convicted. When we look at the Strickland standard, of course, we have a two-part test. The first part of that test is whether counsel's performance was unreasonable under confident defense counsel standards. The second part of the test is a reasonable probability that but for defense counsel's error, the result would have been We would argue that Mr. McPhee, defense counsel, had an obligation to properly communicate this plea offer to Mr. Ordinola, and we contend that he did not. And we contend that Mr. Ordinola's testimony at the hearing clearly indicates that, and the trial court was incorrect in its conclusion. We also contend that Mr. McPhee failed in his duty by not having the government reduce that plea offer to writing. And if it had been reduced to writing, to translate it into Spanish so that Mr. Ordinola could understand it. And then finally Now we encounter the other finding, which there wasn't a, according to the findings of the district court, there never was a firm plea offer from the government. So if that's the case, there wouldn't have been something from the government to translate. Well, Your Honors, anticipating that, and again, we look at this document, which was the exhibit number two, was defense exhibit number two to the hearing. There was something, Your Honors, when we look at this document, on one side we see plea, on the other side we see trial. Just on the face of this document alone, we would contend to you that maybe there was not a formal plea agreement. And part of our argument is that was the fault of defense counsel not to reduce it to a formal plea offer, but there was something. And it was this something that Mr. Ordinola was trying to accept. It never got anywhere. And he wasn't sophisticated enough, like the defendants in the Bailot case or the defendant in the Riviera-Sanchez case, to try to bring this matter to the trial court before sentencing or at any time when he had the opportunity in court. He simply wasn't able to do that and couldn't figure out how to do that. He had not been involved in the American criminal justice system before. So again, Your Honors, we believe and we argue that there was some kind of a plea offer, however you want to construe it, and that it is demonstrated by Exhibit 2 to the defendant's hearing. Well, doesn't that exhibit list the possible punishment if there's a plea and the possible punishment if there's a trial? Yes, it does, Your Honor. Doesn't that corroborate what the attorney testified to? Well, it does, Your Honor, to a certain extent, except Mr. Ordinola testified at the hearing that he had not seen this document before. He was very clear about that, and he and I had discussed that before the hearing, actually, in terms of this is the document that I knew that Mr. McPhee was going to use to support his position that he did discuss the ramifications with Mr. Ordinola. And we don't contest that there was discussion. The issue is whether or not Mr. Ordinola tried to accept a plea offer. And, of course, preliminary to that is whether or not there was actually a plea offer. And, again, we contend that there was one that Mr. Ordinola tried to accept it, that he did accept it, that he expected that things would be different. Instead, he found himself in trial. He was convicted. For his relief, we were asking for the relief that the court applied in the Bailout case. We were asking that Mr. Ordinola be his case be remanded to the trial court and that he be resentenced in along the lines of the plea offer that he believed he accepted. Thank you. I'll reserve my last minute and a half here for rebuttal.  Thank you. May it please the Court. My name is Matthew Thomas on behalf of the United States of America. I'm standing in for Hugh Barry, who wrote the brief in this case. But I was a trial, one of the trial lawyers on the case, and I remember it well because it was my first federal trial. The issue, as the Court has pointed out, is really a question of credibility, and that's the issue that Judge Tanner had to decide in making his decision. And I think the record bears out that Judge Tanner made the right decision. The defendant in this case did testify at trial, and he testified that he was innocent, that he wasn't involved in this drug deal, and he basically blamed it on his co-defendants, including his own brother. He testified that he was just out with them looking for pills for his wife and that he didn't know it was methamphetamine that he was pulling out from under the seat and handing over to an undercover agent. So the question comes up, if you want to plead guilty, why do you testify at trial that you're innocent? The district court judge in this case, Judge Tanner, had to – he sat through the trial and he also sat through the 2255 hearing, and he made a credibility call. He heard both the defendant and Mr. McPhee testify back-to-back in the evidentiary hearing, and he found that Mr. McPhee was more credible. And I think there's several good reasons for why that is so. One, as the court has pointed out, Mr. McPhee's testimony was corroborated by his own notes in this case, which Your Honors have on page 80 of the excerpt of record, which I've blown up for you. And I think there's something really significant on these notes. In the right-hand column, Mr. McPhee wrote down what the possible consequences might be if he goes to trial. One of the things he put down is that the defendant might get an enhancement for obstructing, two points, for testifying in a fashion that was unbelievable, that Judge Tanner might find that he had not told the truth on the stand. Now, the reason that's significant is if Mr. McPhee was so gun-ho on going to trial, why would he have advised the defendant of the risk that he was taking by testifying at trial? Mr. McPhee could not have been more clear in that record that you have before you. He said the defendant absolutely wanted to go to trial. That's a quote. He said he clearly wanted to testify during trial. And he said also he testified at trial exactly as he had indicated he would. Mr. McPhee also made it clear when he was asked a direct question as to whether this was a government offer, he said, actually, this was plea negotiation, not an offer. Mr. McPhee testified he wrote these notes in front of the defendant in jail with a Spanish interpreter present. The Strickland case is a two-part test. And, Your Honors, the government submits that you only have to get to the first part of that test. Was Mr. McPhee's performance reasonable? The answer is yes. The second part of the test is if his conduct was unreasonable, would the results have been different? The answer is no. This defendant wanted to go to trial. He believed that he would get off at trial. He told Mr. McPhee, according to what Mr. McPhee testified, that he could not do any time in jail, would not do any time in jail. The defendant tries to raise the professional standard by saying that Mr. McPhee should have done more, that he should have forced the government to write him a letter with an offer. Well, it's pretty clear from the record that the defendant was not interested in an offer from the government. So when you're preparing for trial, do you waste your time writing out a plea agreement when you know there isn't going to be a plea? And the Blaylock case, which is cited by the defendant, doesn't stand for that proposition either. Judge Tanner found that the defendant was not believable. And again, there's good reason for that. The defendant testified about 36 months. Where on this piece of paper does it mention 36 months? I looked at the guidelines. I couldn't find a way of getting to 36 months. Where did he come up with 36 months? Mr. McPhee testified also, and he put it on this piece of paper, that there was a mandatory minimum of 60 months down at the bottom. So how do you get down to 36 months? Judge Tanner also noted that no one, that it was the defendant who chose to go to trial. No one forced him to go to trial. In fact, the record shows his brother was charged along with him. His brother pled guilty on the day of trial. Wouldn't it raise a question in his mind? Hey, my brother pled guilty. Maybe I can plead guilty too. You look at the history of the case. After he's convicted, he filed a motion for new trial. He then filed an appeal and then filed a pro se appeal. He never argued that he wanted to plead guilty. That issue never came up until four or five years later. The light comes on. Hey, I wanted to plead guilty. It's my lawyer's fault for the situation that I'm in. Defense tells the court you should order us to go back to the beginning and offer him a deal of 46 to 57 months. Well, how do we get there? He never accepted responsibility. How can we give him a deal of 46 months? He never assisted the government, so he doesn't qualify for safety valve. He wasn't a minor participant. He was a major participant. In closing, I just want to say that I think the record is clear that Mr. McPhee did a great job for this defendant. He followed the defendant's wishes. He fought hard at trial. He filed a good appeal. Yet here we are, the defendant arguing that his lawyer was ineffective. I think what this shows is the defendant has never taken responsibility for his actions. At the trial, he blamed someone else. And now he's blaming his lawyer. And so I ask that the Court deny his motion. Thank you. Ms. Olson. Thank you, Your Honors. Two comments, Your Honor. Mr. Thomas raises the question, why would Mr. Ordinola testify at trial that he was innocent, yet on the other side of the fence now come before you and say that he wanted to accept a plea? And I think the answer is very simple. For anybody who is involved in the criminal justice system, people take pleas for lots of reasons. Sometimes they take them simply because the evidence is so overwhelming at trial that they realize that their exposure is so great. And I think that was the situation that Mr. Ordinola found himself in. He trusted Mr. McPhee. You look through his testimony in the transcript and you see where Mr. McPhee also told him, well, if you don't take this deal, and I'm paraphrasing, we have a good chance at trial. Mr. Ordinola believed that, and he trusted Mr. McPhee. So that is why he can take two what appears to be inconsistent positions. Secondly, Mr. Thomas is correct. It is not that I am attempting to raise the bar for defense attorneys by saying that plea offers should be in writing and that the government should place them in writing. I think that is not a higher level. I think that is a basic level. And I don't believe that it is a waste of time to spend possibly half-hour, 45 minutes for the government to have dictated a letter setting out the terms of a simple plea agreement, and then the few minutes more to have it translated into Spanish. From my point of view, from Mr. Ordinola's point of view, that is on a higher standard. That is a basic standard. Thank you. Thank you. The case is submitted.
judges: Browning, Alarcon, Clifton